

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

TLI HOME, INC.,                     )
                                    )
                                    )
                                    )
            Plaintiffs,             )        Case No. 26-03506
    v.                              )
                                    )
                                    )
U.S. CUSTOMS AND BORDER             )
PROTECTION; RODNEY S. SCOTT, in his )
Official capacity as Commissioner of U.S. )
Customs and Border Protection; and the )
UNITED STATES OF AMERICA            )
                                    )
            Defendants.             )

## COMPLAINT

1. Plaintiffs, TLI HOME, INC., ("TLI Home") is a U.S.-based importers of record that has paid tariffs imposed pursuant to a series of executive orders issued by President Donald J. Trump invoking the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., as authority to impose import duties (the "IEEPA duties").

2. Beginning in February 2025, and continuing throughout 2025, the President issued multiple executive orders purporting to impose additional ad valorem tariffs on imported merchandise from China and other countries, relying primarily—and in some instances exclusively—on IEEPA as statutory authority.

3. This Court and the United States Court of Appeals for the Federal Circuit have already held that IEEPA does not authorize the imposition of tariffs and that executive orders imposing tariffs pursuant to IEEPA exceed the President's statutory authority. *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350, 1383(Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

4. The Supreme Court of the United States granted certiorari in *V.O.S. Selections* and a companion case, *Learning Resources, Inc. v. Trump*, No. 24-1287, and heard consolidated oral argument on November 5, 2025.

5. On February 20, 2026, the U.S. Supreme Court held the above-mentioned cases to be unlawful, ruling 6-3 that the IEEPA does not grant the executive branch the authority to levy taxes or duties.



6.  In accordance with the U.S. Supreme Court's instructions, the Court of International Trade ("CIT") then ordered that all IEEPA duties paid to U.S. Custom and Border Protection ("CBP") be refunded to all importers of records ("IORs") that paid them through liquidation or reliquidation. To streamline the refund process, on April 20, 2026, CBP created the Consolidated Administration and Processing of Entries ("CAPE"), with each of the CAPE phases building on the previous one by adding more complex entry types.

7.  CAPE Phase I & II, which is currently in place allowed importers to submit refund claims for most non-finally liquidated entries, including entries that remained open or were recently liquidated. Phase III is expected to address fully liquidated entries and other complex categories that were not eligible under the first two phases.

8.  While plaintiff TLI Home has received partial refunds through CAPE Phases I and II, a significant portion of the unlawfully collected IEEPA duties, together with applicable statutory interest, remains unrecovered and continues to be owed to Plaintiff.

9.  This action is necessary notwithstanding the Supreme Court's decision and supplementing CIT's instruction to CBP because importers that have paid such duties are not guaranteed refunds absent their own judgment and judicial relief. See *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

10. Currently, Plaintiff TLI Home continues to be owed approximately $79,301 in IEEPA duties. Entries reflecting these duties have liquidated post-ninety (90) days, and Plaintiff faces a substantial risk that its ability to recover unlawfully collected duties may be impaired absent timely judicial relief.

11. Accordingly, Plaintiffs seeks a full refund from Defendants of all IEEPA duties that the Plaintiff paid to the United States, which it is still owed and is yet to recover as a result of the Supreme Court's decision and subsequent CIT instructions to CBP.

## THE PARTIES

12. Plaintiff TLI Home, Inc. is a New Jersey corporation and the importer of record for certain furniture imported into the United States that were subject to the challenged IEEPA duties.

13. Plaintiff, TLI Home is referred to in this complaint as "Plaintiff."

14. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security responsible for administering and enforcing U.S. customs laws, including the assessment and collection of duties on imported merchandise.

15. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.



16. Defendant United States of America received the challenged duties and is the proper statutory defendant pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

17. Defendants are referred to collectively in this complaint as ("CBP").

## JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction under 28 U.S.C. § 1581(i) because this action arises out of laws providing for tariffs and the administration and enforcement thereof.

19. Plaintiffs bring this action pursuant to 28 U.S.C. § 2631(i).

20. This Court possesses the same powers in law and equity as a United States district court and may grant declaratory, injunctive, and monetary relief, including refunds of unlawfully collected duties. 28 U.S.C. §§ 1585, 2643(a)(1), (c)(1).

21. Plaintiffs have standing because they are importers of record that paid IEEPA Duties and face imminent liquidation of affected entries, causing concrete and particularized injury redressable by this Court.

## GENERAL ALLEGATIONS

### I.     President Trump issues tariff orders purporting to invoke IEEPA.

#### A.  The President's IEEPA Tariff Orders

22. The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., authorizes the President, upon declaration of a national emergency, to regulate or prohibit certain financial and commercial transactions involving foreign countries or nationals. IEEPA does not authorize the President to impose tariffs or duties on imported merchandise, nor does it reference customs duties, tariff schedules, or import taxes.

23. Notwithstanding these statutory limits, on February 1, 2025, President Donald J. Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China, invoking IEEPA as the sole statutory authority and declaring purported national emergencies.

24. The executive order directed at imports from China—Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025) (the "China Tariff Order")—imposed an additional 10 percent ad valorem tariff on a broad range of Chinese-origin merchandise, including products imported by Plaintiffs.

25. Executive Order 14195 asserted that the imposition of tariffs was necessary to address concerns relating to the synthetic opioid supply chain. The order did not identify any prior instance in which



IEEPA had been used to impose tariffs, nor did it explain how the imposition of import duties falls within IEEPA's statutory framework.

26. On February 5, 2025, the President amended the China Tariff Order through Executive Order 14200, 90 Fed. Reg. 9,277 (Feb. 11, 2025), expanding the scope and application of the tariffs while continuing to rely exclusively on IEEPA as authority.

27. On March 3, 2025, the President issued Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025), further modifying the tariff structure and increasing the effective burden of the duties imposed under the China Tariff Order.

28. Thereafter, on April 2, 2025, the President issued Executive Order 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) (the "Reciprocal Tariff Order").

29. Executive Order 14257 declared trade deficits to constitute a national emergency and imposed a 10 percent baseline tariff on nearly all imports entering the United States, effective April 5, 2025. The order again relied on IEEPA as the statutory basis for imposing tariffs.

30. On April 8, 2025, the President amended the Reciprocal Tariff Order through Executive Order 14259, 90 Fed. Reg. 15,509 (Apr. 14, 2025), including modifications applicable to low-value imports and imports from China.

31. On April 9, 2025, the President issued Executive Order 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025), adjusting tariff rates based on foreign government responses.

32. Collectively, these executive orders (the "Challenged Tariff Orders") imposed substantial new tariffs on imports into the United States, including merchandise imported by Plaintiffs, and directed U.S. Customs and Border Protection ("CBP") to implement and collect such tariffs through modifications to the Harmonized Tariff Schedule of the United States.

33. The Challenged Tariff Orders represent an unprecedented use of IEEPA to impose tariffs—an authority that Congress has historically exercised directly through tariff statutes or delegated under carefully circumscribed trade laws such as Sections 201, 232, and 301 of the Trade Act, none of which were invoked here.

34. By imposing tariffs pursuant to IEEPA, the President bypassed the procedural safeguards, statutory limits, and congressional oversight mechanisms that govern tariff actions under traditional trade statutes.



35. As a result, the Challenged Tariff Orders exceed the authority granted by IEEPA, infringe upon Congress's exclusive power to lay and collect duties, and unlawfully subject Plaintiffs to substantial and ongoing tariff liabilities.

## B.  CBP's Implementation of the Challenged Tariffs

36. U.S. Customs and Border Protection ("CBP") is the federal agency charged with administering and enforcing the customs laws of the United States, including the assessment, collection, and liquidation of duties on imported merchandise. *See* 19 U.S.C. §§ 1500, 1502.

37. Pursuant to the Challenged Tariff Orders, CBP implemented the President's directives by modifying the Harmonized Tariff Schedule of the United States ("HTSUS") to create new tariff provisions requiring the assessment of duties purportedly authorized under IEEPA.

38. CBP instructed importers of record to declare and pay the IEEPA Duties at the time of entry or release of covered merchandise and treated the resulting duties as legally due and owing under the customs laws.

39. Acting in a purely ministerial capacity, CBP assessed and collected the IEEPA Duties from Plaintiffs on a continuous basis throughout calendar year 2025, without exercising any independent discretion as to the legality of the underlying tariffs.

40. Plaintiffs imported merchandise subject to the HTSUS provisions created or amended pursuant to the Challenged Tariff Orders and paid IEEPA Duties in order to obtain release of their merchandise into U.S. commerce.

41. Absent relief from this Court, the Plaintiff shall continue to be owed approximately $79,301.00 in IEEPA duties, which reflects duties collected for entries that have now liquidated post-ninety (90) days.

42. Plaintiff faces a substantial risk that its ability to recover unlawfully collected duties may be impaired absent timely judicial relief.

## C.  Liquidation and Loss of Refund Rights

43. Under the customs laws of the United States, "liquidation" is the final computation or ascertainment of duties on an entry of imported merchandise. *See* 19 C.F.R. § 159.1.

44. Absent extension or suspension, entries of merchandise liquidate by operation of law within one year of the date of entry. *See* 19 U.S.C. § 1504(a).



45. Once liquidation occurs, Plaintiffs face a substantial risk that their ability to recover unlawfully collected duties may be impaired absent timely judicial relief.

46. In particular, where CBP acts in a purely ministerial capacity to assess and collect duties pursuant to presidential directives—as is the case with the Challenged Tariff Orders—administrative protests under 19 U.S.C. § 1514 do not provide a meaningful avenue for relief because CBP lacks authority to disregard or invalidate the underlying executive orders.

47. Courts have repeatedly recognized that liquidation may permanently foreclose an importer's ability to recover unlawfully collected duties, even where the underlying tariff is later held unlawful. *See, e.g., In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365–66 (Ct. Int'l Trade 2021).

48. As the Federal Circuit has further explained, importers are not guaranteed refunds of unlawfully collected duties absent their own judgment and judicial relief. *See Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

49. Plaintiffs' entries subject to the Challenged Tariff Orders are scheduled to begin liquidating imminently, and many additional entries will liquidate on a rolling basis throughout the pendency of this litigation.

50. If Plaintiffs are required to wait until after liquidation to seek relief through administrative protests or other post-liquidation mechanisms, they face a substantial risk that their claims for refunds may be impaired, delayed, or otherwise complicated, absent timely judicial relief.

51. Moreover, requiring Plaintiffs to pursue administrative protests or post-summary corrections on an entry-by-entry basis would be impracticable and unduly burdensome given the volume of affected entries, and would be inadequate to address Plaintiffs' claims because CBP lacks discretion to deviate from or invalidate the Challenged Tariff Orders.

52. Absent timely judicial relief, Plaintiffs face a substantial risk of ongoing and prospective harm, including impairment of their ability to obtain full refunds for duties assessed on past entries.

53. Declaratory and injunctive relief from this Court is therefore necessary to clarify the parties' legal rights and obligations and to provide a mechanism for them to obtain full refunds for duties assessed on past entries.

## II.     IEEPA does not authorize tariffs.

54. The United States Supreme Court in *Learning Resources, Inc. v. Trump* has already squarely held that IEEPA does not authorize the imposition of tariffs.

55. Because IEEPA does not authorize tariffs, the Challenged Tariff Orders are ultra vires, void ab initio, and unlawful.



56. CBP therefore lacks authority to withhold unlawfully collected IEEPA Duties on Plaintiffs' past imports.

### III.    Plaintiff paid preliminary IEEPA duties.

57. As of the date of this Complaint, Plaintiffs have paid substantial duties imposed pursuant to the Challenged Tariff Orders invoking IEEPA.

58. Plaintiffs' imports subject to the Challenged Tariff Orders entered the United States under newly created or amended Harmonized Tariff Schedule of the United States ("HTSUS") provisions implemented by CBP to effectuate the IEEPA-based tariffs.

59. Acting as importers of record, Plaintiffs were required to declare and pay the IEEPA Duties at the time of entry or release of covered merchandise in order to obtain clearance of their goods into U.S. commerce.

60. Plaintiffs paid IEEPA Duties on a continuous basis throughout calendar year 2025, and through February 24, 2026.

61. Some of the entries for which Plaintiffs have paid IEEPA Duties are now 90-days and beyond post liquidation.

62. Since final liquidation has past, Plaintiffs face a substantial risk that their ability to recover unlawfully collected IEEPA Duties may be impaired or complicated absent timely judicial relief.

63. This Court has authority under 28 U.S.C. § 1581(i) to order reliquidation and refunds of duties that were unlawfully assessed and collected, including duties paid pursuant to the Challenged Tariff Orders. This action is therefore a proper and necessary vehicle for preserving Plaintiffs' refund rights while the mechanism for providing IEEPA Duties under the above circumstances are being developed.

64. Administrative remedies are unavailable or inadequate to address the harms Plaintiffs face from the final liquidation of affected entries because CBP lacks discretion to refund such duties after final liquidation.



## STATEMENT OF CLAIMS

## COUNT I

### THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL
### UNDER *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026)

65. Plaintiffs incorporate by reference paragraphs 1 through 69 above as if fully set forth herein.

66. The United States Supreme Court in *Learning Resources, Inc. v. Trump* has held that the President exceeded his statutory authority under the International Emergency Economic Powers Act ("IEEPA"). Thus, such duties were unlawful.

67. The Challenged Tariff Orders at issue in this action are in accord with the Supreme Court decision in *Learning Resources, Inc. v. Trump*.

68. For the same reasons set forth in *Learning Resources, Inc. v. Trump*, the Challenged Tariff Orders exceed the President's statutory authority, and are unlawful, and have no legal force or effect as applied to Plaintiffs.

69. Defendants therefore lack authority to assess, collect, enforce, or retain IEEPA Duties imposed pursuant to the Challenged Tariff Orders with respect to Plaintiffs' past imports.

70. Plaintiffs are entitled to declaratory and injunctive relief barring Defendants from continuing to withhold the Challenged Tariff Orders against Plaintiffs and to monetary relief in the form of refunds of all IEEPA Duties unlawfully collected from Plaintiffs.

71. Plaintiffs respectfully request that this Court apply its binding precedent and the decision of the Supreme Court, declare the Challenged Tariff Orders unlawful as applied to Plaintiffs, enjoin Defendants from enforcing those orders against Plaintiffs, and order the refund of all IEEPA Duties collected from Plaintiffs, with interest as provided by law.

## COUNT II

### ALTERNATIVE – THE CHALLENGED TARIFF
### ORDERS ARE UNCONSTITUTIONAL

72. Plaintiffs incorporate by reference paragraphs 1 through 72 above as if fully set forth herein.

73. In the alternative, the United States Supreme Court of the United States in *Learning Resources, Inc. v. Trump* has already held that the International Emergency Economic Powers Act ("IEEPA"), are unlawful because such a construction would constitute an impermissible delegation of legislative power from Congress to the President.



74. The United States Constitution vests exclusively in Congress the power to "lay and collect Taxes, Duties, Imposts and Excises." U.S. CONST. art. I, § 8, cl. 1.

75. Under separation-of-powers principles and binding precedent of the Supreme Court of the United States, Congress may not delegate its legislative power to the President absent, at a minimum, an intelligible principle that meaningfully directs and constrains the exercise of that delegated authority.

76. IEEPA provides no intelligible principle authorizing the President to impose tariffs or set tariff rates. To the contrary, IEEPA contains no reference to tariffs or duties and does not supply any standards governing the scope, duration, magnitude, or application of such measures.

77. Construing IEEPA to permit the President to impose tariffs of unlimited scope and duration would therefore violate the nondelegation doctrine and would improperly transfer to the Executive Branch core legislative powers reserved to Congress.

78. Because the Challenged Tariff Orders purport to exercise legislative authority that Congress may not constitutionally delegate, those orders are unconstitutional, unenforceable, and void as applied to Plaintiffs.

79. Plaintiffs respectfully request that this Court declare the Challenged Tariff Orders unconstitutional as applied to Plaintiffs, enjoin Defendants from enforcing those orders against Plaintiffs, and order the refund of all IEEPA Duties collected from Plaintiffs, with interest as provided by law.

## COUNT III

## DECLARATORY RELIEF (28 U.S.C. § 2201)

80. Plaintiffs incorporate by reference paragraphs 1 through 80 above as if fully set forth herein.

81. The United States Supreme Court of the United States in Learning Resources, Inc. v. Trump has already held that the International Emergency Economic Powers Act ("IEEPA"), are unlawful because such a construction would constitute an impermissible delegation of legislative power from Congress to the President.

82. Federal courts have the power to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

83. Plaintiffs' claims present an actual and justiciable controversy regarding the President's authority under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., the constitutionality of construing IEEPA to authorize tariffs, and the authority of United States



Customs and Border Protection ("CBP") to implement, assess, and collect duties pursuant to the Challenged Tariff Orders.

84. Plaintiffs are importers of record that have suffered concrete and particularized injury by being required to pay IEEPA Duties as a result of the Challenged Tariff Orders on merchandise imported into the United States, and Plaintiffs face ongoing and future injury from Defendant's withholding of such collected duties.

85. In accordance with the Supreme Court's decision in *Learning Resources, Inc. v. Trump,* this Court has the authority to declare that the Challenged Tariff Orders are unlawful and unenforceable for the reasons set forth above, and that CBP lacks authority to retain IEEPA Duties already collected.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff TLI Home Inc., respectfully request that this Court:

a)  enjoin Defendants from continuing to retain any tariffs or duties based on the Challenged Tariff Orders with respect to Plaintiffs' past imports;

b)  order the United States to refund to Plaintiffs all IEEPA Duties unlawfully collected pursuant to the Challenged Tariff Orders, including duties paid before the filing of this action, together with interest as provided by law;

c)  award Plaintiffs their reasonable costs and attorneys' fees incurred in bringing this action; and

d)  grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

By:    s/ _____

Attorney for Plaintiff

Date: August 6, 2026

**Amundsen Davis, LLC**
Ngosong Fonkem, (WI) bar # 1089783